

FILED

Jun 21 2019, 5:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Jonathan E. Lamb
John A. Cremer
Cremer & Cremer
Fishers, Indiana

ATTORNEY FOR APPELLEES

Jeffry G. Price
Peru, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Sheri Montgomery, | June 21, 2019 |
| *Appellant*, | Court of Appeals Case No. 18A-ES-2191 |
| v. | Appeal from the Miami Superior Court |
| Estate of Donald M. Montgomery, Steve Shively, the Executor, and | The Honorable Wayne E. Steele, Special Judge |
| The Living Trust of Donald M. Montgomery and Betty M. Montgomery, Steve Shively, Trustee, | Trial Court Cause Nos. 52D02-1611-TR-32 52D02-1612-ES-35 25D01-5216-CB-35 |
| *Appellees*. | |

**Brown, Judge.**

Sheri Montgomery appeals from the trial court's approval of an accounting by Steve Shively as executor of the Estate of Donald M. Montgomery (the "Estate") and trustee of The Living Trust of Donald M. Montgomery and Betty M. Montgomery (the "Trust," and Steve, the Estate, and the Trust, collectively, "Appellees"). Sheri raises two issues which we consolidate and restate as whether the court erred in approving the accounting. We reverse and remand.

## Facts and Procedural History

Sheri and Pamela Shively are the daughters of Donald Montgomery, and Steve is Pamela's husband. In November 2016, Steve filed a Petition to Docket Trust under cause number 52D02-1611-TR-32 (the "Trust Cause"). On December 10, 2016, Donald passed away. On December 12, 2016, Steve filed a petition for probate of Donald's will under cause number 52D02-1612-ES-35 (the "Estate Cause"), and on December 19, 2016, the court appointed Steve as personal representative. Donald's Last Will and Testament bequeathed his estate to Sheri and Pamela equally. On December 22, 2016, the court granted the petition to docket the Trust. A Settlement Agreement and Mutual Release of Claims dated August 2, 2017 (the "Settlement Agreement") was signed by Sheri, Pamela, and Steve, filed in the Trust and Estate Causes, and provided:

> [A]t Don M. Montgomery's date of death there existed certain property belonging to the [Trust] and/or [Estate], with approximate date of death values, to wit:
>
> 1) 1091 W. 450 N. Peru, Indiana, to be determined by appraisal
> 2) 4569 S. Strawtown Pike, Peru, Indiana, to be determined by appraisal

3)  1st Merchants Checking Account, approximate value of $1,917.00;

4)  1st Merchants Money Market, approximate value of $4,902.00;

5)  Logansport Savings, approximate value of $84,930.00;

6)  1st Merchants Bank account, approximate value of $207,000.00;

7)  American Funds account, approximate value of $288,000.00;

8)  Raymond James account. approximate value of $109,162.00;

9)  Vodaphone stock, approximate value of $9,995.00;

10)  Verizon stock, approximate value of $71,192.00;

11)  Comcast stock, approximate value of $39,346.00;

12)  AT&T stock, approximate value of $166,220.00;

13)  Frontier Communications stock, approximate value of $1,000.00;

14)  Fidelity Investments approximate value of $18,000.00;

15)  Raymond James Account, approximate value of $1,038.00;

16)  2012 Chevy Colorado LT, approximate value of $20,000.00;

17)  2013 Chevy Cruz, approximate value of $13,000.00;

18)  2011 Trailer, approximate value of $2,500.00;

19)  Grasshopper Mower, approximate value of $3,250.00;

20)  Cub Cadet Mower, approximate value of $500.00;

21)  Other personal property.

Appellant's Appendix Volume II at 47-48.  It provided, "with the exception of any of their respective rights and obligations created pursuant to this Agreement, upon execution of this agreement each party hereby mutually releases and discharges the other . . . from any and all known claims, demands, causes of action, obligations, and liabilities of every kind and nature whatsoever which each had, or claims to have had, or now has, against the other, which related to or arises out of the [Trust] or [Estate]." *Id*. at 48.  It further provided, among other things, that: the Trust and Estate shall each be distributed equally to Sheri and Pamela; Pamela "shall receive the home located at 2569

Strawtown Pike, attributed at appraised value toward her distributive share" and Sheri "shall receive the farm located at 10901 W 450 N, attributed at appraised value toward her distributive share"[1]; Pamela and Sheri "will each receive one-half (1/2) of each of the investment accounts and/or stocks owned as part of this estate or by this trust, listed in numbers 7-15 above"; Sheri shall receive the 2012 Chevy Colorado LT, the Grasshopper mower, 2017 farm rent, and certain other property; and Pamela shall receive the 2013 Chevy Cruz and certain other property. *Id*. at 48. It provided that: Davis, MacDonald, & White Law Firm shall prepare all transfer forms for the transfer or liquidation of stocks and investment accounts; Jeffry G. Price, PC shall prepare deeds, affidavits for transfer of motor vehicles, gather bank accounts, pay bills, file tax returns, and execute any other documents necessary to carry out the terms of the agreement; and the Trust shall bear the expense of attorney fees incurred by the law firms for any and all matters related to the Trust and Estate.

[3] The Settlement Agreement also provided that Steve "shall prepare a Final Combined Personal Representative's and Trustee's Accounting and file any necessary closing documents with the court." *Id*. at 49. It stated that "any adjustments necessary for equalization of trust distributions due to the difference in value of real estate distributed shall be made with cash, and, after equalizing distribution and after the payment of any and all final bills, the remaining cash shall be divided equally and distributed" to Sheri and Pamela.

---

[1] These addresses differ from those listed earlier in the Settlement Agreement.

*Id.* The court issued an order approving the Settlement Agreement and stating that Steve was appointed as trustee of the Trust and personal representative of the Estate "to do all things and execute all documents necessary to carry out the terms and conditions of said Settlement Agreement." *Id.* at 54.

[4]    On December 13, 2017, Steve filed a "Personal Representative's Final Account, Petition to Settle and Allow Account, and Petition for Authority to Distribute Assets Remaining and Close Estate and Petition for Fees of Attorney and Personal Representative" in the Estate Cause. *Id.* at 55. The filing stated that any income tax owed has been paid by the personal representative. The accounting includes three attached schedules, the first of which is labeled "Assets" and provides:

| | |
|---|---|
| 1091 W. 450 N., Logansport, IN (House & 2 acres) | $59,000.00 |
| 49 +/- Acres with Logansport Proprty [sic] | $183,634.00 |
| 4569 S. Strawtown Pike, Peru, IN | $130,000.00 |
| First Merchant's Bank Checking (Estate) | $121,853.00 |
| First Merchant's Bank Checking | $152.00 |
| First Merchant's Bank Money Market | $375.00 |
| 2013 Chevy Cruz | $13,000.00 |
| 2012 Chevy Colorado LT | $20,000.00 |
| 2011 Trailer | $2,500.00 |
| Grasshopper Mower | $3,250.00 |
| Cub Cadet Mower | $500.00 |
| Land Rent (Hattery) 2016, 2017 | $12,000.00 |
| Household Misc. | $1,500.00 |
| Raymond James | $505,089.00 |
| Partial Distribution to Pam Shively | $283,949.00 |
| Partial Distribution to Sheri Montgomery | $146,065.00 |
| ASSETS/INCOME TO ESTATE: | $1,482,867.00 |

*Id*. at 59.  The next schedule is labeled "Expenses" and lists nineteen expenses that total $20,264.67.  *Id*. at 60.  The expenses include among other items attorney fees of Jeffry Price, utilities, automobile and homeowners insurance, lawn care, tax preparation and appraisal services, and property taxes.  The third schedule provides:

RECAPITULATION

| | |
|---|---|
| Total Assets | $1,482,867.00 |
| Total Disbursements | $20,264.67 |
| Net Available for Distribution | $1,462,602.33 |

DISTRIBUTION

| | |
|---|---|
| Pamela Shively | $731,301.16 |
| Sheri Montgomery | $731,301.17 |
| | $1,462,602.33 |

*Id*. at 61.

[5]     In January 2018, Sheri filed an objection to the accounting in both causes claiming errors including that: Steve "failed to show beginning and ending dates and balances from date of death to present, how real property and personal property was valued"; the "number of shares of stock were not provided along with the date-of-death value of said shares with adjustments"; Sheri had been "deeded real property from the trust by a warranty trustee deed executed on December 7, 2017"; Steve "failed to explain how the partial distributions were allocated" to Pamela and Sheri and "how each shall receive the amounts they are to receive"; Sheri's attorney fees were not included or paid as ordered; no records were presented to establish the numbers in the

accounting; and no "reserve" account can be located on the accounting. *Id*. at 66-67. Sheri requested that the court order Steve to comply with the Indiana Code and the Settlement Agreement or, in the alternative, consider the removal of Steve and the appointment of a neutral third party to fulfill the parties' agreement. In February 2018, Sheri filed a motion for removal of Steve as personal representative and trustee and the appointment of a neutral third party.

[6] On March 12, 2018, the court held a hearing. Steve indicated he believed the assets and expenses listed were accurate, he did not know of any monies that were not represented in the accounting, he never received a bill for Sheri's attorney fees, and "the bottom line is everything was eventually liquidated" and all the funds were deposited in the estate account. Transcript Volume 2 at 67. When asked if the American Funds listed in the Settlement Agreement had been liquidated, he testified that the American Funds were part of the holdings at Raymond James and that "the entire Raymond James Account - because it was essentially in one large account, it made sense to say well just split it. Open a new account in Pam's name. Open a new account in Sheri's name. They each get 50 percent and we don't have to go through all this," and "that's been accomplished." *Id*. He indicated the Vodafone, Verizon, Comcast, AT&T, and Frontier Communications stock had been sold, and that Fidelity Investments "was basically down as life insurance" and it was split between Pamela and Sheri with each receiving a check for $9,000. *Id*. at 69. He stated that he had informed Sheri's attorney in November 2017 that he was thinking he was going to need to hold money back in reserve to file taxes for 2017 and testified "I

mean in part I'm holding up that because I had no idea what's going to happen down the road, so I wanted to make sure that there was enough funds available" and "I did not want to have to, after everything settled, have to go to Sheri and try to get money to pay for something that I had no way of knowing." *Id*. at 70. He indicated the Chevy Colorado and Grasshopper mower are in Sheri's possession that he was prepared to liquidate the estate and trust accounts once the court approved the accounting.

[7] On March 14, 2018, the court issued an order denying Sheri's motion for removal of Steve as trustee and personal representative and providing: "The parties are instructed to work through their respective counsel to set up dates and places for transfer of all personal property." Appellant's Appendix Volume II at 110. Sheri filed a Motion to Correct Error and/or Motion to Reconsider, which the court denied. On August 13, 2018, the court issued an "Order Closing Estate Proceeding and Closing Trust Docket" stating that Sheri's objection "has now been overruled and the said accounting otherwise approved" and, "[i]n order to clarify the record, the Court now directs the Clerk to make an entry showing that the final accounting . . . has been approved" and the Estate is closed and to make a similar entry with regard to the Trust. *Id*. at 122. Sheri appeals.[2]

---

[2] Appellees filed a motion to dismiss Sheri's appeal as untimely. In response, Sheri argued the March 14, 2018 order was not a final judgment and that the court ruled on her objections to the accounting for the first time in its August 13, 2018 order closing the Estate and Trust proceedings. This Court denied the motion to dismiss.

*Discussion*

[8] The issue is whether the trial court erred in approving Steve's accounting. The court's findings control as to the issues they cover and a general judgment will control as to the issues upon which there are no findings. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). Findings are clearly erroneous when the record contains no facts to support them. *Id.* A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id*.

[9] Sheri maintains that Steve's accounting is statutorily deficient. She argues the assets schedule does not contain a beginning balance identifying the assets Steve was initially charged with administering, the schedule is undated and does not even appear to be an inventory of all assets as of a single point in time, and she cannot tell what happened to the assets listed in the Settlement Agreement and why they are so different from his assets schedule. She further argues the expenses schedule does not list gains or income received during his administration, her attorney fees as required, expected future expenses despite his testimony, or the gains or losses incurred through the sale of the stocks identified in the Settlement Agreement. She states that the last schedule does not identify property held by Steve as of the filing of the accounting and the assets which have been distributed. She also asserts the accounting was not verified as statutorily required and that his testimony does not cure the accounting "because it is conclusion-based in nature." Appellant's Brief at 25.

[10] Appellees assert that Sheri received a partial distribution of $148,000 and title to a house and thus cannot bring this appeal and that she cannot complain about

the accounting or any matters related to the Settlement Agreement in light of its release language. They claim the accounting "tracks rather well all of the assets listed in the [S]ettlement [A]greement," there "was no need for a beginning balance because the beginning balance was shown in the [S]ettlement [A]greement," "the short time lapse between the approval of the agreement and the submission of the final accounting . . . was a mere matter of months," and "[l]ittle would have changed from the assets identified in the [S]ettlement [A]greement until the accounting itself." Appellees' Brief at 20. Appellees argue the real estate was divided pursuant to the Settlement Agreement, the Raymond James accounts were divided in-kind, and Sheri provides no details showing Steve abused his fiduciary responsibility. They argue "it would make sense for Steve to withhold the complete distribution of the assets since the objection was filed in January, and one would expect that either the estate or the trust (or both) would be required to file income tax returns with regard to any gains or income incurred in that calendar year." *Id*. at 23. They argue that, to the extent there was a technical defect in that the accounting was not verified, the defect was corrected by Steve's sworn testimony, and they assert "[i]t appears that the trial court concluded that Sheri's objections were largely either procedural or so minimal in its [sic] impact on the overall accounting, as to warrant approval of Steve's final accounting." *Id*. at 26. In reply, Sheri argues that she did not release Steve from his obligations under the Settlement Agreement, including his obligation to file a final accounting. She also argues the partial distribution did not constitute a waiver of his fiduciary obligations.

Ind. Code § 29-1-16-3 provides in part that "[e]very personal representative may file in the court a verified account of his administration at any time prior to final settlement and distribution but every personal representative must file in the court a verified account of his administration . . . (a) Upon filing a petition for final settlement . . . [and] [a]t any other time when directed by the court either of its own motion or on the application of any interested person." Ind. Code § 29-1-16-4 provides:

> Accounts rendered to the court by a personal representative shall be for a period distinctly stated and shall consist of three (3) schedules, of which the first shall show the amount of the property chargeable to the personal representative; the second shall show payments, charges, losses and distributions; the third shall show the property on hand constituting the balance of such account, if any. When an account is filed, the personal representative shall also file receipts for disbursements of assets made during the period covered by the account. Whenever the personal representative is unable to file receipts for any disbursements, the court may permit him to substantiate them by other proof. The court may provide for an inspection of the balance of assets on hand. The court may, upon its own motion, or upon petition, provide that verification of accounts or credits thereon may be made by the unqualified certificate of a certified public accountant in lieu of receipts or other proof.

Ind. Code § 29-1-16-5 provides in part: "At the time of filing of an account the personal representative shall petition the court to settle and allow his account; and if the estate is in a proper condition to be closed, he shall also petition the court for an order authorizing him to distribute the estate, and shall specify in

the petition the persons to whom distribution is to be made and the proportions or parts of the estate to which each is entitled."

[12] Further, Ind. Code § 29-1-17-2 provides, "[i]n its decree of final distribution, the court shall designate the persons to whom distribution is to be made, and the proportions or parts of the estate, or the amounts, to which each is entitled under the will and the provisions of this probate code," "the decree shall state that all claims except those therein specified are paid and shall describe the claims for the payment of which a special fund is set aside, and the amount of such fund," and "[i]f any contingent claims which have been duly allowed are still unpaid and have not become absolute, such claims shall be described in the decree, which shall state whether the distributees take subject to them." The statute further provides "[i]f a fund is set aside for the payment of contingent claims, the decree shall provide for the distribution of such fund in the event that all or a part of it is not needed to satisfy such contingent claims," and "[i]f a decree of partial distribution has been previously made, the decree of final distribution shall expressly confirm it, or, for good cause, shall modify said decree and state specifically what modifications are made." Also, Ind. Code § 29-1-17-13 provides that, "[u]pon the filing of a supplemental report of distribution together with receipts or other evidence satisfactory to the court that distribution has been made as ordered in the final decree, the court shall enter an order of discharge."

[13] Ind. Code § 30-4-5-12 governs accounting by trustees and provides in part that, unless the terms of the trust provide otherwise or waived, the trustee shall

deliver a written statement of accounts to each income beneficiary or the income beneficiary's personal representative annually and the statement shall contain at least all receipts and disbursements since the last statement and all items of trust property held by the trustee on the date of the statement at their inventory value. Ind. Code § 30-4-5-13 provides that a verified statement of accounts filed with the court shall show, among other requirements, the period covered by the account; the total principal with which the trustee is chargeable according to the last preceding written statement or the original inventory if there is no preceding statement; an itemized schedule of all principal cash and property received and disbursed, distributed, or otherwise disposed of during the period; an itemized schedule of income received and disbursed, distributed, or otherwise disposed of during the period; the balance of principal and income remaining at the close of the period, how invested, and both the inventory and current market values of all investments.

[14] We observe that the signatories to the Settlement Agreement expressly agreed that they did not release any claim related to their rights and obligations created pursuant to the agreement, and the agreement required Steve to file a combined final accounting. *See* Appellant's Appendix Volume II at 48-49 (Settlement Agreement provides that, "with the exception of any of their respective rights and obligations created pursuant to this Agreement, . . . each party hereby mutually releases and discharges the other" and provides that Steve shall prepare a final combined accounting and file any necessary closing documents with the court). Sheri was entitled to the distribution set forth in the Settlement

Agreement[3] and did not, by virtue of the partial distributions, forfeit her right to enforce the terms of the Settlement Agreement or to challenge the accounting. *See* Ind. Code §§ 29-1-17-1, -2 (addressing partial distributions).

[15] We turn next to the accounting. While much of the property and many of the amounts listed in the Settlement Agreement may be included or reflected in Steve's first schedule of "Assets," the schedule does not provide an explanation or reference to documentation regarding any liquidation, transfer, or distribution which occurred following the execution of the Settlement Agreement. The partial distributions to Sheri and Pamela are listed as assets. The schedule does not indicate which assets may have been liquidated or transferred to Pamela or Sheri or indicate how the undisbursed assets would be distributed. The Settlement Agreement lists two tracts of real property, and the schedule of assets lists three tracts and does not indicate that they have been or will be transferred. The accounting in the record does not include appraisals or records showing the closure of accounts or transfers of funds. The schedule does not indicate whether the funds held at First Merchants Bank or Raymond James have been distributed. The second schedule related to expenses does not include attorney fees incurred by Sheri which may be required under the Settlement Agreement.

---

[3] Steve's assets schedule shows Sheri had received a partial distribution of $146,065, and the distributions schedule indicates that she is entitled to a distribution of $731,301.17.

[16]     In addition, while the third schedule indicates the net amount available for distribution and the amounts to which Sheri and Pamela are entitled based on the asset values used and identified expenses, the unverified schedules do not indicate which assets have been distributed and, to the extent property has not been disbursed, do not explain how the distribution will be made, which items have been or will be transferred directly to Sheri and Pamela, which items have been or will be liquidated, and how the distributions to Sheri and Pamela will be equalized. While Steve testified that the funds at Raymond James were divided into two accounts, one in Sheri's name and one in Pamela's name, the assets and distributions schedules do not reflect this division or transfer. While Appellees state that it would make no sense for Steve to complete the distribution of all assets, the distribution schedule does not reflect any amounts held in reserve, Steve did not file a supplemental report of distribution, and the court nevertheless closed the proceedings. A final distribution consistent with the Settlement Agreement should be verified and effected before the proceedings are closed.

[17]     For the foregoing reasons, we reverse the trial court's approval of the accounting and remand for further proceedings consistent with this opinion.

[18]     Reversed and remanded.


May, J., and Mathias, J., concur.